## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | MO:20-CR-227-DC |
| | § | |
| MARTIN BLAS CORTEZ | § | |

### ORDER DENYING MOTION TO SUPPRESS

BEFORE THE COURT is the Motion to Suppress filed by Defendant Martin Blas Cortez (Defendant). (Doc. 24). After due consideration of the parties' arguments, the evidence, and the relevant law, the Court **DENIES** the Motion to Suppress. (Doc. 24).

### I. BACKGROUND

A federal grand jury charged Defendant with knowingly possessing ammunition, despite knowing he had previously been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Doc. 11). Defendant filed the instant Motion to Suppress on November 9, 2020. (Doc. 24). The Government filed a timely response in opposition to the Motion to Suppress. (Doc. 26). The Court conducted an evidentiary hearing regarding the Motion to Suppress on December 18, 2020. (*See* Doc. 29).

### II. FACTS

At the suppression hearing, the Government presented the testimony of Corporal Taylor Box and Corporal Reed Jones of the Odessa Police Department (OPD) and Officer Brandon Upchurch of the Ector County Independent School District Police Department. The Government offered excerpts of video recordings taken by Corporals Box and Jones's body cameras, respectively. Defendant introduced into evidence all the footage from Corporal Box's body camera and footage from Corporal Ronny Tarango's body camera.

Shortly after 9:00 a.m., on July 18, 2020, Corporal Box responded to a request for a welfare check at a Denny's parking lot in Odessa, Texas. The report was of a man asleep in a black truck. Corporal Box arrived at the Denny's at approximately 9:04 a.m., and approached a black Chevrolet truck in the parking lot. The man in the truck, later identified as Defendant, partially opened his window but refused to lower his window further. He handed over his identification card, at Corporal Box's request. When asked why he was asleep in the parking lot, Defendant said he became tired while driving and stopped to sleep. He denied consuming alcohol, asserting "I don't drink, and I don't do drugs." Corporal Box directed Defendant to step out of his vehicle. Defendant asked if he was being detained, and Corporal Box asserted that he was detaining Defendant because he had reasonable suspicion that Defendant was intoxicated. Corporal Box again requested that Defendant step out of the vehicle, but Defendant refused, stating that he had been advised by a lawyer that the police could not search him or his vehicle without a search warrant and adding that the vehicle belonged to his mother. Corporal Box radioed a request for assistance. Then Defendant and Corporal Box spent several minutes discussing whether Defendant was required to step out of the vehicle and whether Corporal Box could lawfully try to open the door or carry out his threat to break the window of the vehicle to force Defendant's exit.

Approximately four minutes into the investigatory detention, Corporal Jones and Corporal Tarango arrived at the scene. Over the next ten minutes, Corporals Box, Jones, and Tarango attempted to persuade Defendant to comply with the order to exit his vehicle. During that time the officers learned Defendant did not have any warrants, did not possess a driver's license, had prior criminal history related to narcotics, and was on federal supervised release. Defendant and Corporal Tarango also had a discussion about whether the officers could search

the vehicle, and Corporal Tarango indicated he did not think the officers had probable cause to search Defendant's vehicle. After Corporal Tarango indicated the officers would not search the truck, Defendant agreed to exit his vehicle. Defendant exited the truck approximately fourteen minutes after Corporal Box approached it.

After Defendant stepped out of the vehicle, officers frisked Defendant's waist area and removed a knife he told them was in his pocket. The officers proceeded to question Defendant and he reiterated that he became tired while driving and had pulled over to sleep. He also asserted that, in the past, employees of Denny's had given him permission to park in the parking lot and rest. In the course of the interview, Defendant admitted he had previously "relapsed" with drug use but asserted he had not used drugs in months. Defendant denied that there was anything illegal in the truck and, when one of the officers asked for permission to search the vehicle, refused consent because the truck belonged to his mother. Corporal Tarango told Defendant that he would be held responsible for anything in the vehicle, because the truck was in his care, custody, and control. Corporal Tarango also told Defendant it was a violation of the terms of Defendant's supervised release to refuse consent to search the truck.[1] Defendant maintained it was not a violation, and Corporal Tarango asserted that the officers were going to contact Defendant's probation officer. The attempt to contact the probation officer was unsuccessful.

Approximately twenty-three minutes into the encounter, Corporal Jones left the scene to determine if the Denny's management wanted to assert a claim of criminal trespass. He returned at roughly 9:30 a.m. and informed Defendant that the Denny's management had asserted a criminal trespass claim. Corporal Jones warned Defendant that if he returned to the Denny's he would be arrested.

---

1. There was no search condition associated with Defendant's supervised release.

Meanwhile, Corporal Tarango returned Defendant's identification card to him and cautioned him that the window tint was too dark on the truck. He also warned Defendant that he was not allowed to drive a vehicle because he did not possess a valid driver's license. Corporal Tarango stated that if he observed Defendant driving the truck, he would arrest Defendant.

Around 9:30 a.m., an officer reported that the vehicle registration sticker was fake, and after some investigation, the officers asserted the vehicle was stolen. As the officers handcuffed Defendant, he explained that the truck had been stolen and Defendant and his family had worked with an OPD detective to recover it. One of the officers informed him he was being detained until the officers determined why the vehicle registration sticker was associated with a stolen vehicle. Corporal Tarango and another officer determined that the registration sticker was associated with a different truck that had been stolen in Ward County, Texas. Corporal Tarango contacted the Ward County Sheriff's Department to provide deputies with Defendant's information so they could follow up with him.

Defendant explained to Corporal Box and later to Corporal Tarango that the black Chevrolet truck had been stolen and subsequently recovered. The thieves had removed the original license plates and registration sticker and replaced them. Defendant stated that he was told to leave the registration sticker and license plates on the truck until new ones arrived. He also asserted that he and his father had obtained new license plates, but they were waiting for the new registration sticker. Defendant asked if he was being arrested. Corporal Box said no and stated that if Defendant was caught driving the truck with an incorrect registration sticker only a citation would result. Defendant again referred to his former positive drug tests and asserted that he had not used drugs in several months.

At approximately 9:46 a.m., Corporal Box conducted a test of Defendant's vision to determine if he was intoxicated. Corporal Box stated that he was not going to continue testing Defendant, because Defendant showed no signs of intoxication.

At 10:04 a.m., an hour after Corporal Box arrived at the scene, Corporal Box informed Defendant that he was being detained so a drug detection-dog could be brought to the scene to sniff Defendant's truck. Corporal Box asserted that the officers had reasonable suspicion to believe there were narcotics in the truck due to Defendant's refusal of consent to search and his history of involvement with narcotics.

Officer Upchurch testified that he did not remember when he received the request to bring his drug detection dog to the Denny's but admitted that sometime around 10:00 a.m. sounded correct. The dog alerted to the truck at approximately 10:12 a.m., and the officers searched it. No drugs were found in the vehicle, but the officers discovered the two rounds of ammunition that form the basis of this prosecution.

### III. LEGAL STANDARD

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend IV. The Supreme Court has determined warrantless searches and seizures are per se unreasonable unless an exception to the warrant requirement is applicable. *See Katz v. United States*, 389 U.S. 347, 357 (1967).

Evidence that law enforcement officers obtain in violation of the Fourth Amendment is subject to suppression under the exclusionary rule. *United States v. Massi*, 761 F.3d 512, 520 (5th Cir. 2014). "[T]he exclusionary rule encompasses both the primary evidence obtained as a direct result of an illegal search or seizure and . . . evidence later discovered and found to be

5

derivative of an illegality, the so-called fruit of the poisonous tree." *Utah v. Strieff*, 579 U.S. ___, 136 S. Ct. 2056, 2061 (2016) (internal quotation marks omitted) (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984)).

Ordinarily, the defendant bears the burden of proving by a preponderance of the evidence that the evidence at issue was obtained in violation of the Fourth Amendment. *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001). However, when law enforcement officers conduct a search or seizure without a warrant, the government bears the burden of proving by a preponderance of the evidence that the search or seizure was constitutional. *United States v. McKinnon*, 681 F.3d 203, 207 (5th Cir. 2012).

## IV. DISCUSSION

Defendant contends that he was unlawfully detained without reasonable suspicion until a drug detection dog could arrive at the scene and sniff his vehicle. (Doc. 24 at 5). The Government contends that OPD officers had reasonable suspicion to detain Defendant and the stop was not unduly extended. (Doc. 26 at 2–3). Alternatively, the Government contends that the officers had probable cause to arrest Defendant for driving without a license. *Id.* at 3–4. The Government concludes that the search of the truck was supported by probable cause due to the drug-detection dog's positive alert to the vehicle. Defendant does not object to the initial seizure or contest that the drug-detection dog's alert to the truck provided probable cause for a warrantless search. Accordingly, the issue is whether Defendant's seizure was impermissibly extended.

The Court begins with the Government's argument regarding reasonable suspicion. The current record establishes that the interaction between the police and the Defendant began as a welfare check but transformed into an investigatory detention. At the suppression hearing,

Defendant argued that by approximately 9:45 a.m., the officers had completed their investigations regarding intoxication, criminal trespass, and the incorrect registration sticker and they were merely detaining Defendant until a drug detection dog could arrive at the scene. The Government contends that this detention was constitutionally permissible because, considering the totality of the circumstances, there was reasonable suspicion that Defendant was engaged in drug-related criminal activity.

"Under the very narrow exception announced in *Terry v. Ohio*, police officers may briefly detain a person for investigative purposes if they can point to specific and articulable facts that give rise to reasonable suspicion that a particular person has committed, is committing, or is about to commit a crime." *Lincoln v. Turner*, 874 F.3d 833, 842 (5th Cir. 2017) (internal quotation marks omitted) (quoting *United States v. Monsivais*, 848 F.3d 353, 357 (5th Cir. 2017)). For an investigatory seizure to be permissible under the Fourth Amendment, the seizure must be justified at its inception and must be reasonably related in scope to the circumstances that justified the stop. *Terry v. Ohio*, 392 U.S. 1, 20 (1968). The Supreme Court has held that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez v. United States*, 575 U.S. 348, 350 (2015). An investigatory detention may not be prolonged "unless further reasonable suspicion, supported by articulable facts, emerges." *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004) (en banc).

Courts consider the totality of the circumstances to determine whether an investigatory seizure was supported by reasonable suspicion. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). To justify a detention, law enforcement officers cannot rely on "inarticulate hunches," but "must be able to point to specific and articulable facts, which taken together with rational

7

inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21–22. Police officers may rely upon their experience and training to draw rational inferences from the facts. *Arvizu*, 534 U.S. at 273. "Any analysis of reasonable suspicion is necessarily fact-specific, and factors which by themselves may appear innocent, may in the aggregate rise to the level of reasonable suspicion." *United States v. Ibarra-Sanchez*, 199 F.3d 753, 759 (5th Cir. 1999).

Law enforcement officers may extend a stop until a drug detection canine arrives, so long as there is reasonable suspicion for the continued detention. *See United States v. Reyes*, 963 F.3d 482, 487 (finding the police officer "had reasonable suspicion to extend the stop before he called for a canine sniff"); *United States v. Powell*, 732 F.3d 361, 371 (5th Cir. 2013) (finding that the "reasonable suspicion of [a] drug crime justified . . . the delay in waiting for the canine unit"). Consequently, the Court considers whether, before approximately 9:45 a.m., the officers developed reasonable suspicion of drug-related criminal activity.

Corporal Box asserted, both in the body camera footage and at the suppression hearing, that the officers' reasonable suspicion was based on Defendant's refusal of consent to search the truck and his lengthy criminal history involving drug-related offenses. Additionally, the officers' suspicions were certainly heightened because, even with his long criminal history involving drug-related offenses, Defendant repeatedly stated, not in response to a particular question about drug use, that he did not use drugs. Courts give weight to police officers' observations and the inferences they draw, based on their training and experience. *See Arvizu*, 534 U.S. at 277 (giving "due weight to the factual inferences drawn by the law enforcement officer"). However, courts must make their own determinations regarding reasonable suspicion, based on the totality of the circumstances. *Id.* at 274–76. Indeed, the "subjective motivations of police are deemed irrelevant as long as their conduct does not exceed what they are objectively authorized to do." *United*

8

*States v. Villafranco-Elizondo*, 897 F.3d 635, 641 (5th Cir. 2018). Supreme Court precedent indicates that courts are not limited to consideration of law enforcement officers' articulated rationale for detaining an individual. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (noting "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action"). Therefore, the Court concludes that it is not bound to consider only the reasons articulated by Corporal Box when considering whether, under the totality of the circumstances, there was reasonable suspicion to continue detaining Defendant.

As an initial matter, the Court notes that Defendant's refusal to consent to the search of the truck does not support reasonable suspicion. *See United States v. McKinney*, 980 F.3d 485, 497 (5th Cir. 2020) ("For one, a mere refusal to consent cannot support suspicion."). However, the Court does find that Defendant's behavior surrounding his refusal of consent to search may be considered in analyzing the totality of the circumstances. Defendant refused to lower the darkly tinted window of his vehicle more than a few inches when Corporal Box initially requested that he do so and persisted in his refusal when other officers made similar requests. After refusing to lower his window at the beginning of the encounter, Defendant also refused to comply with Corporal Box's order that he exit his vehicle, asserting that the police could not search him or his vehicle without a warrant. However, Corporal Box had not requested consent to search or even indicated an interest in searching Defendant or his vehicle. Defendant later made a similar assertion to Corporal Jones and Corporal Jones noted that he had not requested consent to search. Furthermore, Defendant did not exit the truck until after Corporal Tarango stated he believed the officers lacked probable cause to search and indicated that the officers

9

were not going to search Defendant's vehicle. Defendant's behavior, and the reasonable inferences that can be drawn from it, suggest Defendant may have had something in his vehicle he was trying to hide.

Defendant's drug-related criminal history and admissions regarding more recent drug use are also specific and articulable facts that support probable cause. Defendant's criminal history included instances of manufacture or delivery of controlled substances and possession of controlled substances. *See Reyes*, 963 F.3d at 489 (considering drug-related conviction as a factor supporting reasonable suspicion). Although Defendant initially denied using drugs and maintained he was currently "clean" and had been for some time, he admitted to the officers that he had relapsed several months before and had failed drug tests during his supervised release. He specifically admitted to using methamphetamine to treat pain related to an injured finger.

After considering the totality of the circumstances, the Court concludes that the officers developed reasonable suspicion of drug-related criminal activity prior to 9:45 a.m. Admittedly, there are possible innocent explanations of Defendant's behavior. However, actions that are consistent with innocent behavior may, when considered in aggregate, "amount to reasonable suspicion." *United States v. Sokolow*, 490 U.S. 1, 9 (1989). Additionally, the Court is mindful that "reasonable suspicion is a low threshold." *See United States v. Castillo*, 804 F.3d 361, 367 (5th Cir. 2015). It requires a level of suspicion that is "considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Navarette v. California*, 572 U.S. 393, 397 (2014) (quoting *Sokolow*, 490 U.S. at 7) Together Defendant's drug-related convictions, admissions of relatively recent drug use, markedly protective behavior about his truck, and the rational inferences that can be drawn from

these specific and articulable facts amount to more than a mere hunch that Defendant was engaged in drug-related activity.

The Court concludes the officers had reasonable suspicion Defendant was engaged in criminal activity related to narcotics and his detention until the alert of the drug detection canine was constitutionally appropriate. Therefore, the Court does not reach the Government's alternative argument. The dog's positive alert provided the officers with probable cause to search Defendant's truck. *See United States v. Rodriguez*, 702 F.3d 206, 210 (5th Cir. 2012) (noting that an alert by a drug detection canine provides probable cause to search a vehicle). Consequently, the discovery of the ammunition was appropriate under the Fourth Amendment, and Defendant's Motion to Suppress is denied.

### V. CONCLUSION

Based on the foregoing discussion, the Court **DENIES** the Motion to Suppress. (Doc. 24).

It is so **ORDERED**.

SIGNED this 1st day of June, 2021.

DAVID COUNTS
UNITED STATES DISTRICT JUDGE